1    WO

2

3

4

5

6

7                    **IN THE UNITED STATES DISTRICT COURT**
                        **FOR THE DISTRICT OF ARIZONA**
8

Jennifer K. Schooley,                    No. CV-14-00301-PHX-ESW
9

10                        Plaintiff,       **ORDER**

         v.
11
     Carolyn W. Colvin, Acting Commissioner
12   of the Social Security Administration,

13                        Defendant.

14

15

16          Pending before the Court is Plaintiff Jennifer K. Schooley's ("Plaintiff") appeal of

17   the Social Security Administration's ("Social Security") denial of her claim for disability

18   insurance benefits.   Plaintiff filed her Title II Social Security Disability Insurance

19   ("SSDI") application on August 24, 2010, alleging disability beginning April 8, 2010.

20   This Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. § 405(g).

21   Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and

22   transcript of the record, a judgment affirming, modifying, or reversing the decision of the

23   Commissioner of Social Security, with or without remanding the case for a rehearing.

24   Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction.[1]  (Doc.

25   9).  After reviewing the Administrative Record ("A.R."), Plaintiff's Opening Brief (Doc.

26

27   _____

28   [1] This case was reassigned to Hon. Eileen S. Willett on November 14, 2014.

18)[2], Defendant's Response Brief (Doc. 20), and Plaintiff's Reply (Doc. 21), the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error.  The decision is therefore affirmed.

## I. LEGAL STANDARDS

### A.  Disability Analysis:  Five-Step Evaluation

The Social Security Act provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1).  To be eligible for benefits, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity.  The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. §§ 404.1520(a).  The claimant has the burden of proof regarding the first four steps:[3]

> **Step One**:  Is the claimant engaged in "substantial gainful activity"?  If so, the analysis ends and disability benefits are denied.  Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments?  A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step.  Otherwise, the ALJ proceeds to step three.

---

[2] Plaintiff's Opening Brief and Reply fail to comply with Local Rule of Civil Procedure 7.1(b), which requires that the "left margin [of a pleading] shall not be less than 1 ½ inches and the right margin shall not be less than ½ inch."

[3] *Parra v. Astrue*, 481 F.3d 742,746 (9th Cir. 2007).

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. §§ 404.1520(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[4]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

**B. Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

---

[4] *Parra*, 481 F.3d at 746.

- 3 -

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court must also consider the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II.  PLAINTIFF'S APPEAL

### A.  Procedural Background

Plaintiff, who was born in 1984, has two years of college and training as a health unit coordinator. (A.R. 572). Plaintiff has experience working as a patient transporter, nurse's aide, unit clerk, and bank teller. (A.R. 41, 83). Plaintiff alleged in her initial SSDI application that on April 8, 2010, at the age of 25, Plaintiff became unable to work due to rheumatoid arthritis and depression. (A.R. 97). The application was later amended to include fibromyalgia. (A.R. 96).

Plaintiff filed her SSDI application on August 25, 2010. (A.R. 172). Social Security initially denied the application on December 6, 2010. (A.R. 121). On July 25,

2011, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of Plaintiff's application.  (A.R. 108).  Thereafter, Plaintiff requested a hearing before an ALJ.  (A.R. 131).  The ALJ held a hearing on May 9, 2012, during which Plaintiff was represented by an attorney.  (A.R. 50-94).  In her May 24, 2012 decision, the ALJ found that Plaintiff is not disabled.  (A.R. 29-43).  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner.  (A.R. 1-7).  On February 17, 2014, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

**B.  The ALJ's Application of the Five-Step Disability Analysis**

The ALJ completed all five steps of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

**1.  Step One: Engagement in "Substantial Gainful Activity"**

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of April 8, 2010.  (A.R. 106).  Neither party disputes this determination.

**2.  Step Two: Presence of Medically Severe Impairment/Combination of Impairments**

The ALJ found that Plaintiff has the following seven impairments: (i) rheumatoid arthritis; (ii) fibromyalgia; (iii) chronic pain disorder; (iv) a depressive disorder; (v) panic disorder; (vi) a history of asthma; and (vii) obesity.  (A.R. 34).  The ALJ's determination at this step is undisputed.

**3.  Step Three: Presence of Listed Impairment(s)**

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations.  (A.R. 34).  Plaintiff argues that the ALJ erred in rejecting psychologist Dr. Brent Geary's opinion that Plaintiff meets Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders).

### 4.  Step Four:  Capacity to Perform Past Relevant Work

The ALJ assessed that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to several restrictions.  (A.R. 36).  The ALJ found that Plaintiff can stand or walk for two hours in an eight hour workday.  Plaintiff can occasionally climb ladders, ropes, scaffolds, ramps, or stairs.  The ALJ also assessed that Plaintiff may frequently balance and stoop, but can only occasionally crouch, kneel, and crawl.  (*Id*.).  Plaintiff may frequently reach to head height and below bilaterally and may occasionally reach overhead bilaterally.  Plaintiff may frequently handle and finger bilaterally.  (*Id*.).   Plaintiff should avoid concentrated exposure to extreme cold, wetness, dangerous machinery with moving parts and unprotected heights.  Plaintiff is further limited to performing simple, repetitive tasks and should work in a position that requires no more than average production standards.  Finally, the ALJ assessed that Plaintiff should only have occasional interaction with public, co-workers, and supervisors, but she can still be around others.  (*Id*.).

At the May 9, 2012 hearing, a vocational expert ("VE") testified that Plaintiff's past relevant work is classified as a nurse's aide, unit clerk, patient transporter, and bank teller.  (A.R. 83).  The VE testified that the exertional level of Plaintiff's past relevant work would exceed her current RFC.  (A.R. 84).  Most of the past work was skilled, which is also precluded by Plaintiff's RFC.  Accordingly, the ALJ found that Plaintiff cannot perform her past relevant work.  (A.R. 41).

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC by (i) failing to properly consider potential limitations caused by Plaintiff's fibromyalgia and obesity; (ii) improperly discrediting Plaintiff's testimony regarding her subjective symptoms; and (iii) improperly weighing the evidence from physicians and other sources, including the statements from Plaintiff's family members.  Plaintiff also argues that remand of this matter is warranted in light of additional evidence that was submitted to the Appeals Council, which is now a part of the administrative record.

### 5.  Step Five: Capacity to Perform Other Work

At the hearing, the ALJ presented the following hypothetical to the VE:

> So if we have an individual who can occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds.  Standing and walking is limited to two hours in an eight hour day.  Sitting about six hours in an eight hour day.  The individual could occasionally climb, kneel, crouch, and crawl.  She can frequently balance and stoop.  The individual can occasionally reach overhead bilaterally.  She can frequently reach to head height and below bilaterally.  Handling and fingering bilaterally are limited to frequently.  This individual must avoid concentrated exposure to extreme cold, wetness and dangerous machinery with moving parts and unprotected heights.  Additionally this individual would be limited to simple, repetitive tasks with only occasional contact with public, coworkers and supervisors but she can be around them so she doesn't need to be isolated.

(A.R. 83-84).

The ALJ asked the VE whether there is any work that Plaintiff could perform given the hypothetical.  (A.R. 85).  The VE testified that Plaintiff could perform representative occupations such as an addressing clerk, document preparer, and surveillance system monitor.  (A.R. 85-86).  Based on the VE's testimony, and after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to work as an addressing clerk, document preparer, and surveillance system monitor.  (A.R. 42-42).

Plaintiff challenges the ALJ's determination at this step by arguing that the ALJ's hypothetical to the VE was deficient as it omitted the statement in Plaintiff's RFC assessment that Plaintiff "should work in a position that requires no more than average production standards."  Plaintiff asserts that the "ALJ's reliance on VE testimony that is inconsistent with her RFC determination is reversible error."  (Doc. 18 at 18).

### C.  Plaintiff's Challenge to the ALJ's Analysis at Step Three

At step three of the disability analysis, an ALJ considers whether a claimant's impairment or combination of impairments meets or equals a listed impairment under 20

C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  The Listings are divided into categories of impairments that relate to various "body systems" (e.g. musculoskeletal system, respiratory system, etc.).  20 C.F.R. § 404.1525(a).  The impairments described within each category are those that Social Security considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  *Id.*  If a claimant's impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).  The Listings thus "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  *Bowen*, 482 U.S. at 153.

Here, Plaintiff argues that she should be found disabled at step three, asserting that she meets or equals (i) Listing 12.04 (Affective Disorders) and (ii) Listing 12.06 (Anxiety-Related Disorders).  To support this argument, Plaintiff primarily relies on the opinion of Dr. Geary, who evaluated Plaintiff on April 18, 2012.  (A.R. 908).  In his report, Dr. Geary opined that:

> [Plaintiff] appears to meet criteria for Section 12.04 Affective Disorders, the Major Depression causing anhedonia, appetite and sleep disturbance, psychomotor retardation, feelings of worthlessness, and difficulty in concentration and memory. She also seems to meet criteria for Section 12.06 Anxiety-Related Disorders, the Panic Disorder causing motor tension, autonomic hyperactivity, persistent fear of crowds, and panic attacks that occur unpredictably at home as well.

(A.R. 914).

The ALJ rejected Dr. Geary's opinion.  (A.R. 39).  Plaintiff argues that the ALJ's reasons for rejecting Dr. Geary's opinion are inadequate.  (Doc. 18 at 19).  Because Dr. Geary is an examining medical source, his opinion cannot be rejected in favor of a contradicting opinion without specific and legitimate reasons that are based on substantial evidence in the record.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692

(9th Cir. 2009).   The ALJ's reasons for rejecting Dr. Geary's opinion include the following:

1.   The ALJ found Dr. Geary's opinion conclusory as the opinion offers "little explanation as to the severity found . . . ."  (A.R. 39).  This is a specific and legitimate reason for rejecting the opinion.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

2.   The ALJ noted that Dr. Geary's report is inconsistent with Plaintiff's treatment records, which do not show the severe and disabling symptoms that Dr. Geary assessed.  (A.R. 40).  This is also a valid reason for rejecting Dr. Geary's opinion.  *See Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a physician's opinion that is inconsistent with the record).

3.   Additionally, the ALJ commented that Dr. Geary's opinion is internally inconsistent.  (A.R. 40).  For instance, Dr. Geary's report discussed that Plaintiff scored 30 out of 30 on the mini-mental status examination, but concluded that Plaintiff had significant concentration difficulties.  (*Id*.).  Additionally, Dr. Geary's report indicated that Plaintiff had "marked limitations in social functioning," but also indicated that Plaintiff "gets along okay with others."  (A.R. 39).  An opinion's internal inconsistency is a specific and legitimate reason for rejecting the opinion.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (a conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider); *Roberts v. Shalala,* 66 F.3d at 179, 184 (9th Cir. 1995) (emphasis added) (upholding ALJ's decision to reject examining psychologist's functional assessment that conflicted with his own written report and test results).

4.   Finally, the ALJ noted that "Dr. Geary was paid by an attorney for his report in order to generate evidence rather than for treatment."  (A.R. 40).   Although the

"purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them," an ALJ may question a doctor's credibility where the opinion had been solicited by the claimant's counsel.  *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996) (upholding ALJ's finding that a doctor's report was untrustworthy because it was obtained solely for the purposes of the administrative hearing, varied from the doctor's own treatment notes, and was worded ambiguously in an apparent attempt to assist the claimant in obtaining social security benefits).

The Court finds that the above reasons for rejecting Dr. Geary's opinion are specific, legitimate, and are based on substantial evidence in the record.[5]  To the extent that Plaintiff is arguing that other evidence in the record supports a finding that Plaintiff is conclusively disabled at step three, Section D below explains that the ALJ did not improperly weigh such evidence.  The Court therefore finds that the ALJ did not err in determining that Plaintiff does not meet Listings 12.04 and 12.06.

### D.  Plaintiff's Challenge to the ALJ's Analysis at Step Four

#### 1.  Social Security Ruling 12-2p, Which Became Effective After the ALJ's Decision, Does Not Warrant Remand

Social Security issues rulings that interpret Social Security statutes and regulations.  *Paulson v. Bowen,* 836 F.2d 1249, 1252 n.2 (9th Cir. 1988).  Although the rulings do not have the force of law, courts defer to them unless they are plainly erroneous or inconsistent with the Social Security Act or regulations.  *Quang Van Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir.1989); *Paxton v. Secretary of Health and Human Servs.,* 856 F.2d 1352, 1356 (9th Cir.1988).

On July 25, 2012, Social Security issued a ruling pertaining to the evaluation of fibromyalgia.  SSR 12-2p, 2012 WL 3104869.  The first part of the ruling discusses the development of evidence to establish that a person has a medically determinable

---

[5] After the ALJ issued her decision, Dr. Geary wrote a response that Plaintiff submitted to the Appeals Council.  The Appeals Council considered Dr. Geary's response and made it a part of the administrative record.  As discussed in Section E(ii) below, Dr. Geary's response does not alter the Court's finding that the Commissioner's decision is based on correct legal standards and is supported by substantial evidence.

- 10 -

1   impairment of fibromyalgia.  The second part of the ruling explains how fibromyalgia fits

2   into the five-step disability analysis.

3           SSR 12-2p explains that at step one, a claimant with fibromyalgia will not be

4   found to be disabled if the claimant is engaged in substantial gainful activity.  At step

5   two, Social Security will find that a claimant's fibromyalgia impairment is severe if it

6   causes a limitation or restriction that has more than a minimal effect on the ability to

7   perform basic work activities.  Regarding step three, SSR 12-2p explains that because

8   fibromyalgia is not a listed impairment, a claimant cannot be found conclusively disabled

9   due solely to the claimant's fibromyalgia impairment.  With respect to determining a

10  claimant's RFC at step four, Social Security "will consider a longitudinal record

11  whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a

12  person may have 'bad days and good days.'"  With respect to steps four and five, SSR

13  12-2p explains that the "usual vocational considerations apply," but notes that:

14              1. Widespread pain and other symptoms associated with
15              [fibromyalgia], such as fatigue, may result in exertional
                limitations that prevent a person from doing the full range of
16              unskilled work in one or more of the exertional categories in
                appendix 2 of subpart P of part 404 (appendix 2).  People
17              with [fibromyalgia] may also have nonexertional physical or
18              mental limitations because of their pain or other symptoms.
                Some may have environmental restrictions, which are also
19              nonexertional.
20
                2. Adjudicators must be alert to the possibility that there may
21              be exertional or nonexertional (for example, postural or
22              environmental) limitations that erode a person's occupational
                base sufficiently to preclude the use of a rule in appendix 2 to
23              direct a decision.  In such cases, adjudicators must use the
24              rules in appendix 2 as a framework for decision-making and
                may need to consult a vocational resource.
25

26  SSR 12-2p, 2012 WL 3104869.

27          Plaintiff argues that in light of SSR 12-2p, the matter must be remanded for

28  another hearing or approving Plaintiff's claim.  Yet at step two, the ALJ found that

1    Plaintiff has a severe case of fibromyalgia.  In determining Plaintiff's RFC at step four,

2    the ALJ considered Plaintiff's testimony that she suffered from fatigue and depression

3    due to her medical conditions.  (A.R. 37-38).  The ALJ also considered the longitudinal

4    evidence regarding Plaintiff's fibromyalgia.  (A.R. 37).  The Court therefore does not

5    find that remand of this matter is warranted under SSR 12-2p.

6                      **2.   The ALJ Properly Weighed the Evidence**

7                  **i.    The ALJ Properly Rejected Plaintiff's Testimony**

8             When evaluating the credibility of a plaintiff's testimony regarding subjective pain

9    or symptoms, the ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d

10   586, 591 (9th Cir. 2009).  In the first step, the ALJ must determine whether the claimant

11   has presented objective medical evidence of an underlying impairment "which could

12   reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v.*

13   *Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The plaintiff does not have to show that the

14   impairment could reasonably be expected to cause the severity of the symptoms.  Rather,

15   a plaintiff must only show that it could have caused some degree of the symptoms.

16   *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

17            If a plaintiff meets the first step, and there is no evidence of malingering, the ALJ

18   can only reject a plaintiff's testimony about the severity of his or her symptoms by

19   offering specific, clear, and convincing reasons.  *Lingenfelter*, 504 F.3d at 1036.  The

20   ALJ cannot rely on general findings.  The ALJ must identify specifically what testimony

21   is not credible and what evidence undermines the plaintiff's complaints.  *Berry v. Astrue*,

22   622 F.3d 1228, 1234 (9th Cir. 2010).  In weighing a plaintiff's credibility, the ALJ can

23   consider many factors including: a plaintiff's reputation for truthfulness, prior

24   inconsistent statements concerning the symptoms, unexplained or inadequately explained

25   failure to seek treatment, and the plaintiff's daily activities.  *Smolen*, 80 F.3d at 1284; *see*

26   *also* 20 C.F.R. §  404.1529(c)(4) (Social Security must consider whether there are

27   conflicts between a claimant's statements and the rest of the evidence).  In addition,

28   although the lack of medical evidence cannot form the sole basis for discounting pain

testimony, it is a factor that the ALJ can consider in his or her credibility analysis. *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005); *see also* 20 C.F.R. 404.1529(c); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects).

Here, Plaintiff argues that the ALJ erred in discrediting Plaintiff's testimony regarding her subjective symptoms.  In Section 5 of the ALJ's decision, the ALJ explained the two-step process to be used in determining the credibility of a claimant's symptoms.  (A.R. 36).  After summarizing Plaintiff's symptom testimony, the ALJ stated that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not fully credible to the extent they are inconsistent with Plaintiff's assessed RFC.  (A.R. 36-37).  The ALJ then discussed specific evidence in the record that discredits Plaintiff's testimony regarding Plaintiff's alleged symptoms.

### a. Alleged Symptoms Pertaining to Plaintiff's Physical Impairments

The ALJ's reasons for discrediting Plaintiff's testimony regarding her alleged symptoms pertaining to her <u>physical</u> impairments include the following:

1.    During a June 2010 hospital admission, Plaintiff's back was non-tender and Plaintiff exhibited a normal range of motion and normal alignment.  (A.R. 37, 454).

2.    In an October 2010 consultative examination with Dr. Mansfield, Plaintiff's gait and posture were normal.  (A.R. 37, 474).  Also of note, Dr. Mansfield mentioned that Plaintiff stated she was "doing o.k." when asked if she was in any significant pain. (A.R. 37).

3.    Plaintiff's range of motion, gait, and coordination were also normal during a June 2011 consultative examination with Dr. Cunningham.  (A.R. 37, 571).

4.     Plaintiff reported that her back was "overall better" during a July 8, 2011 visit at Vibrant Care Rehabilitation.  (A.R. 37, 587).

5.     Results of an October 18, 2011 osteoporosis screening indicated that Plaintiff had normal bone density in her spine and hips.  (A.R. 37, 647).

6.     A February 21, 2012 discharge summary report from STI Physical Therapy stated that Plaintiff obtained 80% of her physical therapy goals.  (A.R. 37, 852).  The report also stated that Plaintiff is "independent in a home exercise program and symptom self-management."  (A.R. 852).  The ALJ noted that this is inconsistent with Plaintiff's testimony of unrelenting pain.  (A.R. 37).

7.     The ALJ recounted that Plaintiff's radiographs were unremarkable and that examinations reveal that Plaintiff has no active synovitis and clinical findings are largely limited to tender trigger points.  (A.R. 37).  In addition, the ALJ noted that there are no consistent findings of joint swelling or muscle weakness and that Plaintiff does not show neurological deficits.  Plaintiff also does not require an assistive device.  (*Id.*).

8.     The ALJ's decision noted that Plaintiff's treatment has been conservative and routine and that Plaintiff has demonstrated good physical abilities during multiple consultative examinations.  (A.R. 37).  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (an ALJ may infer that pain is not disabling if a claimant seeks only minimal conservative treatment).

9.     The ALJ found that Plaintiff's testimony that she spends 14 hours a day in a recliner is exaggerated and not supported by the objective medical evidence.  (A.R. 39). The ALJ inferred that if Plaintiff did spend so much time sedentary, it is expected that the examinations would show some atrophy or muscle weakness.  (*Id.*).  The evidence shows that Plaintiff had normal muscle tone.  (*e.g.* A.R. 362, 460, 575).

10.    The ALJ observed that Plaintiff participated in the hearing closely and fully without being distracted and without any overt pain behavior.  (A.R. 39).  *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (finding that ALJ's reliance on his observations of claimant at the hearing was proper).

- 14 -

11.   The ALJ discussed that Plaintiff's daily activities are not limited to the extent one would expect, given Plaintiff alleged symptoms.  Plaintiff does her own shopping, cares for pets, cooks, reads, watches television, spends time on the computer, drives, and performs housework (e.g. doing the dishes, laundry, dusting, and light cleaning).  (A.R. 39).  *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Molina,* 674 F.3d at 1113 ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

12.   Finally, the ALJ pointed to evidence indicating that Plaintiff was not always compliant with medication and did not follow her doctor's repeated advice to exercise.  (A.R. 39).  *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) (claimant's failure to assert adequate reason for not complying with doctor's advice can cast doubt on the sincerity of the claimant's pain testimony).  Plaintiff also did not follow medical advice that Plaintiff stop smoking.  (A.R. 621, 929).

The ALJ acknowledged that Plaintiff will have some degree of pain due to her fibromyalgia and rheumatoid arthritis, but that the extreme pain Plaintiff alleged is not supported.  (A.R. 37).  The ALJ assessed that Plaintiff's physical impairments might be expected to impose some limitations on Plaintiff's abilities, but that those limitations are adequately accommodated by the assessed RFC.  (A.R. 37).

### b. Alleged Symptoms Pertaining to Plaintiff's Mental Impairments

The ALJ's reasons for discrediting Plaintiff's testimony regarding her alleged symptoms pertaining to her <u>mental</u> impairments include the following:

1.   Plaintiff has not required any hospital admission since her alleged onset date of disability.  (A.R. 38).

- 15 -

1   　　　2.　　Plaintiff's medication has been adjusted and records indicate stabilization of

2   Plaintiff's symptoms.  (A.R. 38).  The ALJ also pointed out that Plaintiff responded well

3   to medication.  (*Id*.).  *Warre v. Comm'r,* 439 F.3d 1001, 1006 (9th Cir. 2006)

4   (impairments that can be controlled with medication are not disabling for Social Security

5   purposes).

6   　　　3.　　Plaintiff has a Global Assessment of Functioning score of 65, which indicates

7   that an individual is "generally functioning pretty well."[6]  (A.R. 38, 558).

8   　　　4.　　The ALJ discussed other evidence showing that Plaintiff's depression and

9   anxiety symptoms are stable.  (A.R. 38).  For example, during hospital admissions in

10  January 2010 and June 2010, Plaintiff was noted to be psychiatrically appropriate.  (A.R.

11  38, 410, 423).  During a September 2011 office visit, Plaintiff did not exhibit any overt

12  signs of anxiety or depression.  (A.R. 38, 618).  Notes from a November 2011 office visit

13  also indicate that Plaintiff reported no hallucinations or delusions as well as no current

14  suicidal ideation.  (A.R. 38).

15  　　　5.　　Finally, the results of Plaintiff's intelligence test on April 18, 2012 revealed a

16  full scale IQ of 88, which places her at the top of the low average range of Intelligence

17  Classification.  (A.R. 38, 912).

18  　　　The ALJ found that Plaintiff's mental impairments might be expected to impose

19  some limitations on Plaintiff, but those limitations are adequately accommodated by the

20  assessed RFC.

21  　　　The ALJ's credibility finding in this case is unlike the brief and conclusory

22  credibility findings that the Ninth Circuit Court of Appeals has deemed insufficient in

23  other cases.  For example, in *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d

24  1090, 1102-03 (9th Cir. 2014), an ALJ stated in a single sentence that "the claimant's

25  statements concerning the intensity, persistence and limiting effects of these symptoms

26  _____

[6] Although a nurse practitioner assessed the GAF score, a nurse practitioner is an "other
27  source" that can provide evidence about the severity of a claimant's impairments and
how it affects the claimant's ability to work.  20 C.F.R. § 404.1513(d).
28

- 16 -

are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The Court of Appeals held that stopping after this introductory remark "falls short of meeting the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse determination is based." *Id.* at 1103 (internal quotation marks omitted); *see also* 42 U.S.C. § 405(b)(1). The Court further stated that an ALJ's "vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)).

In *Robbins v. Astrue*, 466 F.3d 880, 883-84 (9th Cir. 2006), the Court of Appeals found the ALJ's "fleeting credibility finding" insufficient. The ALJ simply stated that (i) the claimant's testimony was "not consistent with or supported by the overall medical evidence of record" and (ii) "[claimant's] testimony regarding his alcohol dependence and abuse problem remains equivocal." *Id*. In discussing why the ALJ's finding was insufficient, the Court explained that the ALJ did not provide a "narrative discussion" containing "specific reasons for the finding . . .supported by the evidence in the record." *Id*. at 884-85.

Similarly, in *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), an ALJ simply concluded that the claimant's complaints were "not credible" and "exaggerated." The Court held that the finding was insufficient as the ALJ did not provide any specific reasons for disbelieving the claimant other than a lack of objective evidence. *Id*. at 834.

The ALJ's credibility finding in this case is more like the credibility finding in *Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1175 (9th Cir. 2008). In *Stubbs-Danielson*, the Ninth Circuit Court of Appeals found that an ALJ sufficiently explained the reasons for discrediting a claimant's symptom testimony where the ALJ stated that:

> The claimant's allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings nor any other corroborating evidence. The record reflects that the claimant has normal activities of daily living, including cooking, house

> cleaning, doing laundry, and helping her husband in managing finances.
>
> * * *
>
> These activities tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis.

The Court of Appeals also found that the medical evidence, including the reports of two physicians who assessed that the claimant could perform a limited range of work, supported the ALJ's credibility determination.

Here, unlike in *Treichler*, *Robbins*, and *Lester*, the ALJ goes beyond making a "fleeting" and conclusory remark that Plaintiff's testimony is not credible.  The ALJ thoroughly discussed the evidence and explained the inconsistencies in the record that she found discredited Plaintiff's testimony.  It is possible that a different ALJ would find Plaintiff's symptom testimony credible.  But it is not the Court's role to second guess an ALJ's decision to disbelieve a Plaintiff's allegations.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . .").   Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.  *Morgan*, 169 F.3d at 599.  The Court finds that the reasons provided by the ALJ for discrediting Plaintiff's testimony are specific, clear, convincing, and are supported by substantial evidence in the record.  The Court therefore finds that the ALJ did not err in discrediting Plaintiff's subjective testimony.

### 3.  The ALJ Did Not Improperly Weigh the Evidence from "Other Sources"

A source that is not an acceptable medical source is considered to be an "other source."  20 CFR 404.1513(d).  "Other sources" include nurse practitioners, therapists, and lay witnesses.  20 CFR § 404.1513.  Information from these "other sources" must still be considered even though the information cannot establish the existence of a medically determinable impairment.  *Id*.  An other source's opinion can be rejected as long as the ALJ provides "germane" reasons, such as finding that the opinion is

1    inconsistent with medical evidence.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir.

2    2005).

3                     **i.   The ALJ Properly Weighed Occupational Therapist Mary**
                            **Hymen's Opinion**
4

5           On April 20 2012, occupational therapist Mary Hymen evaluated Plaintiff for a

6    functional capacity examination.  The ALJ stated that she did not assign great weight to

7    Ms. Hymen's opinion for several reasons.   All of the reasons are germane and are

8    supported by substantial evidence:

9           1.      In explaining why she rejected Ms. Hymen's opinion, the ALJ first states

10   that the "opinion indicates extreme limitations in [Plaintiff's] ability to sustain work

11   activity."  (A.R. 40).   The Court infers from this statement that the ALJ found Ms.

12   Hymen's to be grossly inconsistent with the other evidence in the record.[7]   How

13   consistent an other source's opinion is with the evidence is a factor Social Security

14   considers in evaluating the opinion.   SSR 06-03p, 2006 WL 2329939 at *4.    Social

15   Security also considers the "degree to which the source presents relevant evidence to

16   support an opinion."  *Id*.  The ALJ's finding that Ms. Hymen's opinion is "extreme" and

17   not supported by the objective medical evidence is supported by the record.

18          2.      The  ALJ  discussed  that  Plaintiff  appeared  to  be  self-limiting  as  the

19   evaluation noted that Plaintiff was unable to even rarely lift her arms overhead, rarely

20   bend forward, and could not complete the six minute walk.  (A.R. 40).  Although Plaintiff

21   challenges this finding, it is supported by the record.  For instance, on June 30, 2011,

22   Plaintiff stated that she could walk more than 30 minutes at a time.  (A.R. 570).  In his

23   June 30, 2011 report, Dr. Keith Cunningham found that Plaintiff could lift and/or carry

24   50 pounds up to 1/3 of an eight hour workday and could lift and/or carry 25 pounds up to

25   2/3 of an eight hour workday.  (A.R. 573).

26

27
     ―――――――――――――
28   [7] A reviewing court may draw specific and legitimate inferences from an ALJ's decision.
     *Magallanes*, 881 F.2d at 755.

                                            - 19 -

3.     The ALJ's decision notes that Ms. Hymen "bases her limitations on [Plaintiff's] perceived pain rather than objective signs and clinical findings."  (A.R. 40).  *See Tommasetti,* 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.").

Even if Plaintiff is correct that the ALJ erroneously found that Plaintiff self-limited during Ms. Hymen's examination, the error is harmless.  The ALJ provided other valid, germane reasons for rejecting Ms. Hymen's opinion.  *See Molina*, 674 F.3d at 1115 (where some reasons supporting an ALJ's credibility analysis are found invalid, the error is harmless if the remaining valid reasons provide substantial evidence to support the ALJ's credibility determination and "the error does not negate the validity of the ALJ's ultimate conclusion.").  Accordingly, the Court finds that the ALJ did not err in giving Ms. Hymen's opinion no weight.

### ii.  Testimony of Plaintiff's Brother, Mother, and Grandmother

Social Security considers observations by nonmedical sources (i.e. lay witnesses) about how impairments affect a claimant's ability to work.  20 C.F.R. § 404.1513(d)(4).  Lay witnesses are treated as "other sources."  *Id.*  As such, an ALJ may only discount lay witness testimony by providing "reasons that are germane to each witness."  *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).    Although it cannot be the sole reason for rejecting a lay witness's opinion, an ALJ may consider whether the witness's testimony might be influenced by a desire to help the claimant.  *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (finding that an ALJ did not err in rejecting the testimony of a claimant's girlfriend where the ALJ found that the testimony was inconsistent with the evidence and was possibly influenced by a desire to help the claimant).

Plaintiff submitted function reports completed by Plaintiff's brother, grandmother, and mother.  Plaintiff's mother also testified at the May 9, 2012 hearing.  The ALJ explained that the statements made by Plaintiff's family are not supported by the objective medical evidence.  "Rather than describing [Plaintiff's] symptoms adequately,

the statements are conclusory in noting that the claimant has depression."  (A.R. 41, 212).[8]  The ALJ also found that the statements that Plaintiff has constant pain and swelling and difficulty concentrating are not consistent with the evidence as a whole. (A.R. 41).  With respect to the testimony of Plaintiff's mother, the ALJ noted that her close relationship to Plaintiff and the possibility that her testimony was influenced by a desire to help Plaintiff "cannot be entirely ignored in deciding how much weight it deserves."[9]  (*Id.*).

This case is distinguishable from *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996), which Plaintiff cites to support her argument that the ALJ erred in discrediting her family member's statements.  In *Smolen*, the ALJ only gave two reasons for discrediting the statements of the claimant's family:  (i) as family, the witnesses were "understandably advocates, and biased" and (ii) the claimant's medical records did not corroborate the claimant's fatigue and pain.  *Id.* at 1289.  The Court stated that the "rejection of the testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her fatigue and pain violates SSR 88–13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records."  *Id.*

Here, while the ALJ did mention the close relationship between Plaintiff and her mother, the ALJ did not discount the statements of Plaintiff's mother on that basis alone. Similar to the ALJ in *Greger,* the ALJ gave other germane reasons for the statements of Plaintiff's mother, brother, and grandmother (i.e. the statements are conclusory and inconsistent with other evidence).  *Greger*, 464 F.3d at 972.

---

[8]Defendant's Response (Doc. 20 at 21) states that "the Commissioner could not locate the 'depression' reference use[d] by the ALJ. . . ."  The reference may be found about mid-page on A.R. 212 where Plaintiff's mother stated that "The depression that has also set in not knowing what the future holds for her [and] her dreams and goals being crushed."

[9]This finding is supported by the record.  For instance, a therapist at Jewish Family & Children's Service commented that "[therapist] observed behavior which could be enmeshment to the detriment of both. . . ."  (A.R. 656).

Even if the ALJ did err in rejecting Plaintiff's family members' testimony in part because the ALJ found they were biased, the error is harmless as (i) the ALJ provided other germane reasons for discrediting the testimony and (ii) the error would not alter the validity of the ALJ's ultimate nondisability determination. *Molina,* 674 F.3d at 1115. Further, the statements of Plaintiff's family members duplicate Plaintiff's testimony, which the ALJ properly discredited. *See Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"); *Molina*, 674 F.3d at 1117 ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se.").

### 4. The ALJ Did Not Err in Relying on Drs. Goerss and Rowse's Opinions

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to a treating physician's opinion than to the opinion of a non-treating physician. *Id*. An examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id*. at 830. Under Ninth Circuit case law, an ALJ may favor the opinion of a non-examining physician as long as the opinion is consistent with independent clinical findings or other evidence in the record. *Thomas*, 278 F.3d at 957; *see also Magallanes v. Bowen*, 881 F.2d 747 (9th Cir. 1989) (upholding an ALJ's reliance on the opinion of a

non-examining physician where the opinion was supported by objective medical evidence).

Even though the ALJ rejected Dr. Geary's opinion that Plaintiff is conclusively disabled at step three, the ALJ again considered Dr. Geary's opinion at step four and discussed why she rejected it.  For the reasons discussed in Section C above, the ALJ did not err in rejecting Dr. Geary's opinion in assessing Plaintiff's RFC.

In determining Plaintiff's RFC, the ALJ explained that she assigned significant weight to the opinions of non-examining physicians Drs. Jean Goerss[10] and D. Rowse, who assessed that Plaintiff could perform sedentary work.  The ALJ's reliance on Drs. Goerss and Rowse's opinions is supported by substantial evidence.  In addition to the other evidence discussed in Section D(2)(i) above, Drs. Goerss and Rowse's opinions are supported by the following:

1.    On May 6, 2011, Plaintiff denied problems with mobility and functioning. (A.R. 812).   Plaintiff's neck had full range of movement and ambulated without assistance with a steady gait.  All of Plaintiff's extremities moved freely.  (*Id*.).

2.    A May 16, 2011 mental status exam conducted by a therapist at Jewish Family & Children's Service revealed that Plaintiff's mood was "somewhat depressed and somewhat hopeful," her affect was "appropriate to content," her speech was articulate, her thought process was logical, and her thought content was normal.  The report also noted that Plaintiff's intelligence appeared average, her judgment and impulse control was good, and her insight was good.  (A.R. 556).  During the initial interview, Plaintiff stated that "she wants follow up for her symptoms of depression and low self-esteem stemming from a long term (5 ½ yrs) abusive relationship."  (A.R. 548).  This contradicts Plaintiff's statement to Dr. Geary that her depression "came on with the diagnosis of Rheumatoid Arthritis and everything."  (A.R. 910).

---

[10] Although ALJ identified Dr. Goerss as a "State agency examiner," Dr. Goerss is a non-examining medical consultant.  (A.R. 40, 504).

3.      Examination notes from a September 2, 2011 NextCare visit state the Plaintiff was negative for depression.  (A.R. 618).  The notes also state that Plaintiff was negative for back pain, body aches, joint pain, joint swelling, and limited joint motion.  (*Id.*).  This contradicts Plaintiff's testimony that she is in pain at all times.

4.      A September 26, 2011 examination also revealed no depression and anxiety.  (A.R. 718-19).  Examination notes also state that Plaintiff had a normal gait and "can undergo exercise testing and/or participate in [an] exercise program."  (*Id.*).

5.      On November 22, 2011, Plaintiff was again assessed with normal judgment, insight, mood, and affect.  (A.R. 884).

6.      Notes from a July 12, 2012 exam again confirm that Plaintiff had a normal gait and "can undergo exercise testing and/or participate in [an] exercise program."  (A.R. 964).  Plaintiff's muscle strength and tone were normal.  (A.R. 964-65).

7.      A September 10, 2012 record from the Pain Center of Arizona noted that Plaintiff "**states adequate relief with her current medication regimen allowing her to be active and functional**."  (A.R. 980) (emphasis added).  It was also assessed that Plaintiff did not have depression, anxiety, or agitation.  (A.R. 979).

The Court finds that Drs. Goerss and Rowse's opinions are supported by substantial evidence in the record.  Accordingly, the Court finds that the ALJ did not err in relying on their opinions.

### 5.  The ALJ Properly Considered Plaintiff's Obesity

Social Security Ruling 02-1p provides that obese individuals may have problems with the ability to sustain a function over time.  Obesity is not a listed impairment.  As such, an obese claimant will only be found disabled at step three if there is an impairment that, in combination with obesity, meets the requirement of a listing.  SSR 02-01p, 2002 WL 34686281; *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  The ruling provides that "[a]s with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations."  SSR 02-1p, 2002 WL 34686281 at *7.  The ruling also provides that when obesity is identified as a

medically determinable impairment, Social Security "will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments" that are identified. *Id*.  As it is a claimant's ultimate responsibility to establish that he or she is disabled, a claimant has the burden to provide evidence showing any functional limitations that the obesity caused.  *See Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995) (a claimant bears the burden of proving entitlement to disability benefits).

For example, in *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005)[11], a claimant alleged that an ALJ improperly failed to include obesity as a severe impairment at step two.  The ALJ, however, discussed the obesity when assessing the claimant's RFC.  The ALJ acknowledged that the claimant's obesity likely contributed to the claimant's back discomfort, but concluded that the claimant had the RFC to perform a significant range of light work, subject to additional limitations.  The Ninth Circuit Court of Appeals held that any error in not determining the claimant's obesity severe was harmless as the ALJ adequately considered the obesity in the RFC determination.  The Court noted that the claimant "has not set forth, and there is no evidence in the record, of any functional limitations as a result of [the claimant's obesity] that the ALJ failed to consider."  *Id*. at 684.

Unlike in *Burch*, the ALJ in this case found Plaintiff's obesity to be a severe impairment at step two of the analysis.  (A.R. 34).  In assessing Plaintiff's RFC at step four, the ALJ discussed Plaintiff's obesity.  (A.R. 38-39).  The ALJ noted that Plaintiff has a body mass index of 33.9 as she is six feet tall and approximately 250 pounds.  (A.R. 39).  The ALJ correctly mentioned that there is little medical evidence pertaining to Plaintiff's weight.  (*Id*.).  The ALJ acknowledged that while it is likely that Plaintiff's obesity contributed to Plaintiff's complaints of back pain, there is no evidence to show it precluded work activities.  For instance, the ALJ stated that the evidence does not show

---

[11] The *Burch* decision was issued after SSR 02-1p became effective on September 12, 2002.

that Plaintiff's respiratory and cardiovascular systems are unduly impaired. (*Id.*). Plaintiff's obesity also does not affect Plaintiff's ability to ambulate effectively. (*Id.*). Like the claimant in *Burch*, Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations as a result of Plaintiff's obesity that the ALJ has failed to consider. Accordingly, the ALJ did not err in considering Plaintiff's obesity when assessing Plaintiff's RFC.

### E.  Evidence Submitted to the Appeals Council Does Not Warrant Remand or Reversal of the Commissioner's Decision

As the Appeal Council's denial of a claimant's request for review is a non-final agency action, a U.S. District Court does not have jurisdiction to review the decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011); *see also Klemm v. Astrue,* 543 F.3d 1139, 1144 (9th Cir. 2008) ("The Social Security Act grants to district courts jurisdiction to review only 'final decisions' of the Commissioner."). Yet evidence submitted for the first time to the Appeals Council that the Appeals Council considers in denying review of an ALJ's decision becomes part of the administrative record. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012) (holding that new evidence reviewed by the Appeals Council must be treated as part of the administrative record). The Court must consider the evidence when reviewing the Commissioner's final decision. A doctor's opinion, however, is less persuasive when it is obtained only after an adverse determination on a claimant's application for disability benefits. *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (finding that a doctor's opinion was "all the less persuasive since it was obtained by Appellant only after the ALJ issued an adverse determination"); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

After the ALJ's adverse decision, Plaintiff appealed to the Appeals Council. To support the appeal, Plaintiff submitted evidence from:  (i) Dr. Takenori Watanabe; (ii) Dr. Francis Nardella; (iii) Dr. Savitha Kayla; (iv) Dr. Geary; and (v) the Pain Center of Arizona. None of this new evidence changes the Court's finding that the Commissioner's decision is based on correct legal standards and is supported by substantial evidence.

### i.   Dr. Watanabe

Plaintiff receives benefits under the Supplemental Nutrition Assistance Program ("SNAP").  Federal law requires recipients of SNAP benefits to participate in work-related activities that may lead to employment unless physically or mentally unable to do so.  As part of Plaintiff's application for SNAP benefits, the Arizona Department of Economic Security submitted a "Medical Determination" form to Dr. Watanabe.  The form asked "Do you consider this person totally unable to work or participate in work-related activities?"  (A.R. 936).  On August 12, 2011, Dr. Watanabe checked the "yes" box.  (*Id.*).  Dr. Watanabe also checked "yes" boxes on the form indicating that there are restrictions regarding Plaintiff's mental ability and abilities to lift, stoop, climb or balance, reach or handle, stand, talk, and sit.  (*Id.*).

The "Medical Determination" lacks persuasive value as it is conclusory.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (an ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.").  Dr. Watanabe did not discuss the objective medical evidence on which he based his opinion. It also appears from the record that Dr. Watanabe only examined Plaintiff on one occasion, which was approximately three months prior to his completion of the "medical determination."  (A.R. 612-13).  Moreover, Dr. Watanabe did not indicate whether he assessed that the condition would last for a continuous period of 12 months.  *See Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001) (impairment must be expected to result in death or for a continuous period of not less than twelve months to establish basis for disability under Social Security Act).  In fact, Dr. Watanabe indicated that Plaintiff should be reexamined for an employment assessment in six months.  (A.R. 936). Accordingly, the Commissioner's decision in this case remains supported by substantial evidence.

### ii.   Dr. Geary's Rebuttal Letter

Dr. Geary offered an undated "Response to Administrative Law Judge Patricia Bucci's Decision Regarding Jennifer Schooley."  In the response, Dr. Geary explains

why he disagrees with the ALJ's interpretation of his April 18, 2012 report and other evidence in the record.  To reiterate, it is the ALJ's responsibility to interpret the evidence.  *Magallanes*, 881 F.2d at 750.  As explained in Section C above, the ALJ gave specific and legitimate reasons for rejecting Dr. Geary's opinion.  The Court further finds that the ALJ's interpretation of Dr. Geary's report is reasonable.  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (where "the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the [ALJ].") (quoting *Andrews*, 53 F.3d at 1039).  Dr. Geary's response does not alter that finding.

### iii.    Dr. Nardella

On September 12, 2012, Dr. Nardella evaluated Plaintiff and wrote a report addressed to Plaintiff's attorney.  (A.R. 982).  This report does not change the fact that the ALJ's decision is supported by substantial evidence.  First, the report is based on Plaintiff's subjective complaints.  Dr. Nardella states that Plaintiff's "disability is subjectively quantified in her responses to the residual functional capacity questionnaire." (A.R. 985).  *See Tommasetti,* 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.").  As discussed in Section D(2)(i) above, the ALJ properly discredited Plaintiff's testimony.

Second, Dr. Nardella's report is inconsistent with other evidence in the record.  For example, Dr. Nardella indicates that Plaintiff stated that Lyrica is not helpful in decreasing her pain.  (A.R. 982).  Yet on April 20, 2012, Plaintiff indicated that "[t]he most pain relief [Plaintiff] gets is from Lyrica 125 mg at a 3/10 level."  (A.R. 924).  Plaintiff also stated on July 24, 2012 that she has noticed an increase in pain without her Lyrica.  (A.R. 970).  Finally, on September 10, 2012, only two days before Dr. Nardella's evaluation, a record from the Pain Center of Arizona noted that Plaintiff "**states adequate relief with her current medication regimen allowing her to be active and functional**."  (A.R. 980) (emphasis added).

### iv.   Dr. Kayla

On September 21, 2012, Plaintiff's attorney forwarded Dr. Kayla copies of Dr. Nardella's September 2012 reports.  (A.R. 991).  In his letter to Dr. Kayla, Plaintiff's attorney asked Dr. Kayla to respond to three "yes" or "no" questions:

> 1.  Have you read the independent Medical Evaluation report and Physical Capacities Evaluation of Jennifer Schooley completed by Dr. Francis Nardella?
>
> 2.  Do you agree with Dr. Nardella's opinion regarding diagnoses contained in his report dated 9/12/2012;
>
> 3.  Do you agree with Dr. Nardella's opinion regarding the functional restrictions of Jennifer Schooley contained in his Fibromyalgia Residual Functional Capacity Assessment dated 9/20/2012?

(A.R. 992).

Dr. Kayla checked the "yes" box underneath each question.   (*Id.*).  Dr. Kayla also submitted a letter dated September 26, 2012.  (A.R. 993).  In the letter, Dr. Kayla clarified that her opinion is based <u>entirely on Plaintiff's self-evaluation</u> and that she has <u>not observed</u> Plaintiff in a home or work environment, or simulated environment, so she cannot determine the impact of symptoms in relation to Plaintiff's activities.  Dr. Kayla specifically stated that a work evaluation specialist would better address "these critical issues."  (*Id.*).

Dr. Kayla also stated that she did not question Plaintiff's assertion that Plaintiff is disabled for all competitive work requirements.  (*Id.*).  But the ALJ, not Dr. Kayla, is responsible for determining Plaintiff's credibility.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (recognizing that the ALJ is responsible for determining credibility).  Again, the ALJ did not improperly discount Plaintiff's testimony.  Because Dr. Kayla's opinion is based entirely on Plaintiff's subjective complaints, which were properly discredited, the Commissioner's decision remains supported by substantial evidence in the record.  *See Tommasetti,* 533 F.3d at 1041.

### v.   Additional Pain Center of Arizona Records

Plaintiff submitted to the Appeals Council additional records from the Pain Center of Arizona. The records support the ALJ's credibility assessment of Plaintiff. For instance, on May 8, 2012, Plaintiff reported that she was in the <u>maximum amount of pain possible</u> (ten out of ten), yet additional exam findings state that Plaintiff was "<u>pleasant and alert,</u>" in "<u>no acute distress,</u>" and that her <u>mood was "upbeat</u>" and affect was congruent. (A.R. 943-44). On June 21, 2012, Plaintiff indicated that her pain was a nine out of ten. (A.R. 958). Yet, again, additional exam findings state that she was pleasant and alert, in no acute distress, and had an upbeat mood. (A.R. 959).

It is also notable that Plaintiff arrived at all of her pain management appointments with no assistance, even on the day in which she was allegedly in the maximum amount of pain possible. Further, the additional Pain Center of Arizona records indicate that Plaintiff had a normal gait and normal muscle tone. As noted by the ALJ, this is inconsistent with Plaintiff's testimony that she spends approximately 14 waking hours a day immobile.

Finally, the most recent reports from the Pain Center of Arizona in the record discuss that Plaintiff's pain is under control. On July 24, 2012, it was noted that the frequency of pain was less frequent and shorter. On July 30, 2012, it states that Plaintiff's pain is improved. (A.R. 972). As mentioned previously, on September 10, 2012, it is noted that Plaintiff "states adequate relief with her current medication regimen allowing her to be active and functional." (A.R. 980) (emphasis added). Again, it was also assessed that Plaintiff did not have depression, anxiety, or agitation. (A.R. 979).

### F.  Plaintiff's Challenge to the ALJ's Analysis at Step 5:  The ALJ's Hypothetical to the VE is Legally Sufficient

In establishing that a claimant can perform other work, an ALJ may rely on a VE's testimony. A hypothetical presented to a VE, however, must reflect all of the claimant's limitations. *DeLorme v. Sullivan,* 924 F.2d 841, 850 (9th Cir.1991) (holding that if a VE's hypothetical does not reflect all the claimant's limitations, then the VE's testimony

1   does not support a finding that the claimant can perform jobs in the national economy);

2   *Osenbrock v. Apfel*, 240 F.3d 1157 (an ALJ must propose a hypothetical to VE that is

3   based on medical assumptions supported by substantial evidence in the record that

4   reflects each of the claimant's limitations).

5         However, like other alleged errors made by an ALJ, the Court must consider the

6   harmless error rule when analyzing a claimant's argument that an ALJ presented a

7   deficient hypothetical to a VE.  Where a disability claimant argues that an ALJ has erred,

8   the claimant must also show that the asserted error resulted in actual harm.  *See Ludwig v.*

9   *Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error

10  to demonstrate not only the error, but also that it affected his "substantial rights," which

11  is to say, not merely his procedural rights.") (citing *Shinseki v. Sanders*, 556 U.S. 396,

12  407–09 (2009)).  The Ninth Circuit Court of Appeals has addressed the harmless error

13  rule in the context of a claimant's challenge to an ALJ's determination at step five.

14        For example, in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008),

15  a claimant argued that an ALJ failed to meet the ALJ's "step five burden of identifying

16  specific jobs [the claimant] could perform" by asserting that the ALJ erroneously omitted

17  postural limitations in the assessed RFC, which was presented as a hypothetical to the

18  VE.  The Ninth Circuit Court of Appeals found that the alleged error in the RFC was

19  harmless as the ALJ also assessed that the claimant was limited to sedentary work, which

20  required infrequent stooping, balancing, crouching, or climbing.  *Id*. at 1174.  Because

21  the Court found that the VE described job categories that were "sufficiently specific to

22  identify jobs that match [the claimant's] abilities," the Court did not find that the ALJ

23  committed harmful error in omitting postural limitations in the hypothetical presented to

24  the VE.  *Id*. at 1176.

25        Here, the ALJ's RFC assessment of Plaintiff includes the statement that Plaintiff

26  "should work in a position that requires no more than average production standards."

27  (A.R. 36).  The ALJ omitted that statement in the hypothetical presented to the VE.

28  (A.R. 83-84).  Based on the hypothetical, the VE testified that Plaintiff can perform the

positions of addressing clerk, document preparer, or surveillance system monitor.  (A.R. 85-86).  The ALJ accepted the VE's testimony that Plaintiff can perform these jobs after considering Plaintiff's age, work experience, and RFC.  (A.R. 43).  Plaintiff argues that accepting the VE's testimony, which was based on a hypothetical that omitted the "no more than average production standards" statement, constitutes reversible error.

The descriptions in the *Dictionary of Occupational Titles* ("DOT") for the positions of addressing clerk, document preparer, and surveillance system monitor do not indicate that an ability to achieve "more than average production standards" is required.[12] Plaintiff does not cite to any authority suggesting that those positions would require "more than average production standards."  The Court finds that the ALJ's omission of the "average production standards" statement in the hypothetical to the VE is inconsequential to the Commissioner's ultimate non-disability determination.

### III.  CONCLUSION

Based on the foregoing, the Court concludes that the ALJ's decision is supported by substantial evidence and is free from reversible error.  Accordingly, the decision of the Commissioner of Social Security is affirmed.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security.  The Clerk of Court shall enter judgment accordingly.

Dated this 11th day of March, 2015.

_____
Eileen S. Willett
United States Magistrate Judge

---

[12] The description in the *Dictionary of Occupational Titles* ("DOT") for the "addressing clerk" position is available at http://www.occupationalinfo.org/20/209587010.html.
The DOT's description for the "document preparer" position is available at http://www.occupationalinfo.org/24/249587018.html.
The DOT's description for the "surveillance system monitor" position is available at http://www.occupationalinfo.org/37/379367010.html.